## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**MAXWELL TATUM,**                       CASE NO: 2:22-cv-14282
      **Plaintiff,**

v.

**WILLIAM D. SNYDER, in his**
**official capacity as Sheriff, Martin**
**County, Florida, and STEVEN**
**O'LEARY, individually,**

      **Defendants.**
_____/

## COMPLAINT

Plaintiff, MAXWELL TATUM, hereby brings this action against Defendants, WILLIAM D. SNYDER, in his official capacity as Sheriff, Martin County, Florida, and STEVEN O'LEARY, individually, and allege:

### NATURE OF THE ACTION

1.      This is an action brought under the common law of the State of Florida and for violations of the Fourth and Fourteenth Amendments to the United States Constitution, brought through 42 U.S.C. §1983. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interests, and for prospective injunctive relief. Attorneys' fees and costs are sought under 42 U.S.C. §1988.

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. § 1343 as it involves civil rights claims arising under federal law, and 28

1

U.S.C. § 1367 supplemental jurisdiction as to all other claims arising out of the same operative facts.

3.      Venue is appropriate in this Court as the illegal acts alleged to have been committed by Defendants against Plaintiff occurred wholly within Martin County, Florida.

## THE PARTIES

4.      Plaintiff, MAXWELL TATUM, (hereinafter "TATUM or "PLAINTIFF") is a citizen of the State of Florida residing in Martin County and is otherwise *sui juris.*

5.      At all times pertinent hereto, Defendant, WILLIAM D. SNYDER (hereinafter "SNYDER" or "SHERIFF"), in his official capacity as Sheriff of Martin County, has been organized and existing under the laws of the State of Florida as the Martin County Sheriff's Office (hereinafter "MCSO") with its headquarters located at Stuart, Florida.

6.      At all times pertinent hereto, Defendant, STEVEN O'LEARY (hereinafter "O'LEARY"), has been a resident of the state of Florida. He is *sui Juris.* At all times hereto, Defendant O'LEARY was employed as a Deputy with MCSO.

## CONDITIONS PRECEDENT

7.      Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were timely submitted to Defendants pursuant to 768.28(6), Florida Statutes. Plaintiff has satisfied all conditions precedent to bringing this action, if any. This action is timely filed thereafter.

## STATEMENT OF FACTS

8.      The MCSO was designated as a High Intensity Drug Trafficking Area by the National Drug Control Policy and submitted an application to receive federal grant money in September 2017.

9.      At all times material, MCSO deputies were under pressure to increase the number of narcotics arrests in Martin County to continue to qualify for this federal grant money.

10.      At all times pertinent hereto, Defendant O'LEARY was employed by SHERIFF as a deputy with a date of hire of February 1, 2018 and assigned to the Road Patrol Division on March 21, 2018.

11.      At all times material, O'LEARY was pressured by MCSO to increase the number of narcotics arrests, and, as a result, increase the likelihood of fulfilling his own ambition for a promotion to become a narcotics detective within MCSO.

12.      After being hired, O'LEARY observed and learned the MCSO customs and practices as it related to narcotics investigations by assisting other deputies within MCSO and even assisting SHERIFF SNYDER personally with vehicle searches following traffic stops.

13.      From these observations and experiences with the MCSO deputies and SNYDER, O'LEARY learned the MCSO practices related to: reasonable suspicion; probable cause; search and seizure; securing and inventory of evidence.

14.       O'LEARY began falsifying official statements, tampering with evidence, falsifying and/or planting evidence and falsely arresting citizens in order to increase his narcotics arrests for the MCSO on or about May 3, 2018 (Exhibit A, Warrant and Complaint Affidavit):

> Base[d] on the investigation conducted by the Martin County Sheriff's Office your Affiant has probable cause to believe that between February 2018 and January 2019, Steven O'Leary, while under the color of law, employed as a Deputy Sheriff for the Martin County Sheriff's Office, engaged in an ongoing pattern of Official Misconduct, Fabricating Evidence, False Imprisonment, and False Official Statement.

15.       O'Leary continued to engage in this pattern of misconduct from May 2018 through December 30, 2018, which noticeably escalated to more serious charges and arrests as

noted in the Complaint Affidavit (Exhibit A):

> During his eleven months working for the Martin County Sheriff's Office Steven O'Leary made eighty-six arrests for narcotics related charges. In many cases, especially early in his tenure, these cases centered on Cannabis and THC oil. In the vast majority of those cases, he was successful in locating and identifying the controlled substances in question. However, as his number of felony cases increased, the number of instances where no controlled substance was found also exponentially increased.

16.     O'LEARY was actively committing felonies against citizens of Martin County, including the Plaintiff, during his eleven months of employment where he worked side by side to process his arrests with numerous MCSO deputies including K-9 Units, evidence custodians, shift supervising sergeants and even prosecutors with the State Attorney's Office.

17.     Local defense attorneys began to notice irregularities in O'LEARY's arrests and were able to uncover O'LEARY'S misconduct.

18.     A fifty count Information was filed against O'LEARY on August 9, 2019, in the Martin County Circuit Court before the Honorable Sherwood Bauer, in State of Florida vs. Steven O'Leary, Case No. 2019-CF-872 (Exhibit B):

> Eighteen (18) counts of Official Misconduct; Nine (9) counts of False Official Statement; Eight (8) counts of Tampering with Evidence; Thirteen 913) counts of False Imprisonment; One (1) count of Second-Degree Petit Theft; and One (1) Count of Battery.

19.     Also, during that eleven-month timeframe, facts existed that place SNYDER on actual or constructive notice as to O'LEARY's illegal actions, including: the failure to impound vehicles in which drugs had been found following arrests; the size and quantity of narcotics he was seizing compared to historical drug arrests in Martin County; the frequency with which he was making narcotics arrests compared to other road patrol deputies within MCSO.

20.     O'LEARY's shift partners and shift supervisors at MCSO also stood idly by

while O'LEARY made numerous false arrests.

21.     Furthermore, in numerous instances, other Martin County Sheriff's Office Deputies were personally involved with the false arrests.

22.     MCSO was complicit in O'LEARY's misconduct through its failure to address O'LEARY's illegal actions over the course of 11 months. This was a complete failure of department management and command structure by actively choosing to turn a blind eye to O'LEARY's behavior.

23.     O'LEARY, acting as a MCSO Deputy, through the course and scope of his employment, willfully and maliciously agreed to and did engage in a conspiracy in furtherance of certain criminal, illegal and otherwise improper acts and conduct including but not limited to acts and conduct previously mentioned and detailed herein.

24.     While acting in furtherance of the conspiracy, he committed specific criminal, illegal, and tortious acts against Plaintiff as described in greater detail herein. At all times pertinent hereto, O'LEARY was acting in furtherance of the custom and practice of SNYDER of pretextual stops, falsifying probable cause affidavits to effect arrests, illegally detaining and arresting citizens and others within the State of Florida and maliciously prosecuting them. These actions violated the civil and constitutional rights of Plaintiff.

25.     Plaintiff was damaged by the acts and conduct of the Defendants acting individually or in combination as detailed more fully herein.

## MAXWELL TATUM

26.     According to OLEARY's arrest affidavit of June 20, 2018, on June 19, 2018, he responded to a complaint ostensibly based on an allegation of a black truck being illegally parked inside a Martin County Park after hours.

27.     According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY allegedly approached the unoccupied vehicle and looked inside the windows of the truck claiming to see in plain view a Ziploc bag of syringes and what appeared to be a loose orange pill.

28.     According to OLEARY's arrest affidavit of June 20, 2018, a short time later, Plaintiff, TATUM, allegedly approached his vehicle from the roadway and identified himself to O'LEARY.

29.     According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY informed TATUM of what he allegedly saw in plain view inside of the truck and TATUM allegedly retrieved his identification, locked, and shut the door of his vehicle.

30.     According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY's stated that he read TATUM his Miranda Warning and TATUM advised him that the clothes and boots inside the vehicle belonged to him and everything else "must be planted."

31.     According to OLEARY's arrest affidavit of June 20, 2018, when O'LEARY asked TATUM to clarify, TATUM advised "the drugs." The arrest report further alleges upon further questioning, TATUM asked for a lawyer. At this time, O'LEARY apparently asked no further questions.

32.      According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY next performed a search of TATUM's vehicle, which was an illegal search without probable cause based upon O'LEARY's false accusations. This was a pretextual stop and search of TATUM's vehicle. Consent to search the vehicle was either not given or coerced based on O'LEARY's false statements.

33.     During the illegal search of the vehicle, O'LEARY allegedly recovered two pink in color ChapStick containers that had a white substance inside.

34.     According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY conducted a field test of the substance and falsified the results and stated the test was positive for methamphetamine.

35.     According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY also allegedly recovered a vape inside the cupholder of the vehicle that was loaded with a dark liquid substance that emitted the odor of cannabis.

36.     According to OLEARY's arrest affidavit of June 20, 2018, O'LEARY conducted a field test of the substance and falsified the results and stated the test was positive for THC content.

37.     The alleged orange pill was to be sent off to the lab for further testing according to the arrest affidavit.

38.     At no time pertinent hereto did TATUM knowingly or willfully possess, constructively or otherwise, any illegal drugs or paraphernalia including, but not limited to, methamphetamine and/or THC content nor did he admit to possessing any such illegal substances.

39.     On June 19, 2018, TATUM was wrongfully arrested by O'LEARY, handcuffed, and transported to the Defendant SHERIFF's jail where he was booked and charged with Count One: Possession of Marijuana over 20 Grams (Hash-Oil), Count Two: Possession of Methamphetamine, and Count Three: Possession of Drug Paraphernalia. TATUM was wrongfully detained at SHERIFF's detention facility.

40.     Defendant O'LEARY knowingly, willfully, and maliciously provided a sworn affidavit containing false information that formed the basis for TATUM's wrongful arrest and subsequent incarceration.

41.     On or about July 2, 2018, the State of Florida filed an information charging

TATUM as charged as to Count One: Possession of Tetrahydrocannabinol (THC), Count Two: Possession of Methamphetamine, and Count Three: Use or Possession of Drug Paraphernalia.

42.      TATUM was incarcerated in the Defendant SHERIFF's jail for one hundred eight (108) days prior to entering a plea to the alleged crimes, as charged.

43.      On October 4, 2018, TATUM entered a no contest plea and was sentenced as charged to eighteen (18) months in the Department of Corrections as to Count One and Count Two. TATUM entered a plea for time served as to Count Three. TATUM was then transported to the Department of Corrections. TATUM was adjudicated guilty of all counts at that time.

44.      On January 15, 2019, the Public Defender's Office filed a Motion to Set Aside Judgement and Sentence of TATUM in which the Court granted the Motion to Set Aside Judgement and Sentence.

45.      On January 16, 2019, the State Attorney's Office filed a Nolle Prosequi and all criminal charges against TATUM were dismissed. However, TATUM's arrest records and court case documents are still available for public viewing online.

46.      TATUM has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendants should be made to pay said fee under the laws referenced above.

## <u>COUNT I</u>
## CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983
### (Brought by Plaintiff Against O'LEARY)

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count:

47.      The actions of O'LEARY occurred within the scope of his employment with

8

MCSO, under color of state law, having occurred within the authorized time and space limits of his duties and for a purpose to serve SNYDER.

48.     At all times material hereto, O'LEARY had a legal duty to not subject Plaintiff to unreasonable search and seizure, without probable cause, warrant or exigent circumstances.

49.     O'LEARY subjected Plaintiff to an unreasonable search and seizure, without probable cause, warrant or exigent circumstances, which was objectively unreasonable in light of the facts and circumstances confronting O'LEARY.

50.     O'LEARY violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and violated Plaintiff' rights to be free from unreasonable searches and seizures by searching their persons and vehicles without a search warrant, probable cause, or exigent circumstances.

51.     These violations were of a type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established in Florida, in federal case law, including that of the Federal Court of Appeals of the United States, 11th Circuit, and under the case law of the U.S. Supreme Court.

52.     The aforesaid acts of O'LEARY were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference to the health, safety, and civil rights of all Plaintiff and for this reason, Plaintiff are entitled to an award of punitive damages.

53.     As a direct and proximate result of the unlawful conduct of O'LEARY as aforesaid, Plaintiff was deprived of his civil rights and forced to suffer great aggravation, humiliation, embarrassment, mental anguish and harm, loss of standing in the community and pecuniary losses including loss of income and loss of earning capacity.

WHEREFORE, PLAINTIFF demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

<u>**COUNT II**</u>
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983**
**(Brought by Plaintiff Against SNYDER)**

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count.

54.    At all times, SNYDER was responsible for MCSO, its agents, and employees, including supervising, overseeing, training, and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

55.    At all times material hereto, SNYDER was charged with the responsibility of adopting and implementing rules and procedures for the proper and efficient maintenance, supervision, and control of the officers of the MCSO. These duties include, but are not limited to:

      a.  To create, adopt and implement rules, regulations, practices and procedures, toward hiring and retaining law enforcement officers who do not have a propensity of searching citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration;

      b.  To create, adopt and implement rules and regulations, practices and procedures for proper and efficient training of law enforcement officers

in a way and to an extent necessary to ensure officers would be prevented from searching citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration;

c.  To create, adopt and implement rules and regulations, practices and procedures for the proper and efficient supervision, control, discipline and assignment of law enforcement officers in a way and to an extent necessary to ensure that officers will not search citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration; and

d.  To implement rules, regulation, policies, practices and procedures for the proper and efficient supervision, discipline, and control of law enforcement officers to reduce or eliminate instances of untruthfulness and to properly punish those officers who commit same; and

e.  To implement rules, regulations, policies, practices, and procedures necessary to properly and fully investigate claims by citizens that law enforcement officers searched citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration.

56.      SNYDER, with deliberate indifference, failed to adequately train or otherwise supervise and direct MCSO and its deputy sheriffs concerning the rights of the citizens they encounter in their duties, such that it is a policy, practice, and custom for deputy sheriffs, including O'LEARY, to take extreme and reckless actions against the citizens they encounter, including the PLAINTIFF.

57.      SNYDER has directly participated in the inadequate training as he personally conducted a traffic stop and search without probable cause to justify the search.

58.      On June 14, 2018, SNYDER participated in the wrongful detention and search of an individual which was conducted in the presence of O'LEARY, further cementing MCSO and SNYDER's customs and practices as it relates to search and seizure rights of citizens.

59.      Such action by SNYDER was taken by O'LEARY as tacit approval of the constitutional violations suffered by the PLAINTIFF and others.

60.      In further disregard of the rights of citizens that MCSO and its deputy sheriffs encounter, SNYDER has, with deliberate indifference, either failed to direct, failed to otherwise fully require, or has sought to limit, MCSO and others in the proper investigation of the extreme and wanton acts of his deputy sheriffs, such that it is the policy, practice and custom of limiting investigations of deputy sheriffs with few or no serious questions raised as to deputy sheriffs actions or a deputy sheriffs claims as to citizens they encounter.

61.      These actions by SNYDER amount to a purposeful failure of oversight in the actions of his deputies as it relates to making narcotics arrests.

62.      By limiting and/or failing to investigate, resulting in findings of no violations of law, accepting deputy sheriffs' word as gospel and otherwise adopting the justification for his deputy sheriffs extreme and wanton actions, SNYDER has ratified, condoned, and

consented to the deputy sheriffs unlawful conduct, including the ratification, condoning, and consenting to the unlawful conduct of O'LEARY to the PLAINTIFF.

63.      Had SNYDER not consciously engaged in the foregoing, regarding the actions of his deputy sheriffs, including O'LEARY, and properly investigated and punished (including terminating and bringing charges) against deputy sheriffs who violated the law and MCSO General Orders, the actions of O'LEARY as to the PLAINTIFF would not have taken place and the damages to the PLAINTIFF would not have occurred, thus obviating the need to bring this action.

64.      The aforementioned actions in this case committed by O'LEARY were proximately caused by these policies, customs, and practices of SNYDER in failing to fulfill his duties as alleged in this Complaint.

65.      Had O'LEARY known he was not free to lie on police reports and make false arrests because such conduct was regularly being investigated by SNYDER and his staff when such instances came to their attention, he would not have engaged in his illegal and fraudulent conduct against the PLAINTIFF and the consequences and damages of same would not have inured to the PLAINTIFF.

66.      The aforementioned policies, customs and practices of SNYDER and the actions of SNYDER were the cause of the PLAINTIFF being deprived of their civil rights, being forced to suffer great aggravation, humiliation, embarrassment, mental anguish and harm, loss of standing in the community and pecuniary losses including loss of income and loss of earning capacity.

67.      The recklessness and deliberate indifference of SNYDER identified above, including the eleven months of unlawful acts of O'LEARY without any corrective action or

oversight, was a further underlying cause of the constitutional torts committed by O'LEARY and was the proximate cause of the PLAINTIFF' injuries and damages.

WHEREFORE, PLAINTIFF demands judgment against SNYDER for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

<u>**COUNT III**</u>
**COMMON LAW FALSE IMPRISONMENT/ARREST**
**(Brought by Plaintiff Against SNYDER)**

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count:

68.     O'LEARY without process or authority of law, wrongfully, unlawfully, against the will of the PLAINTIFF and without probable cause, forcibly arrested and restrained the PLAINTIFF and compelled them to go to the Martin County Jail.

69.     The PLAINTIFF, at the time he was arrested and imprisoned, was acting peacefully and in a lawful manner. No warrant for the arrest and imprisonment of the PLAINTIFF was ever sought by O'LEARY.

70.     The arrest was not objectively reasonable under the totality of the circumstances.

71.     The aforesaid acts of O'LEARY were performed knowingly and intentionally and similar to other acts of unlawful arrests committed by O'LEARY over eleven months under the supervision of SNYDER.

72.     By reason of the above, PLAINTIFF was deprived of his liberty and has been caused great physical and mental suffering, humiliation, shame, public ridicule, and has been inconvenienced and suffered loss of standing in the community and resulting pecuniary losses.

The PLAINTIFF suffered special damages including past and future lost earnings and earning potential, incurred legal fees and investigation expenses necessitated solely by O'LEARY's actions.

73.    As O'LEARY's employer, SNYDER is responsible for O'LEARY's acts and is liable to the PLAINTIFF for damages, including economic and non-economic pain and suffering, loss of capacity of life, mental suffering, shame, public ridicule, and has been inconvenienced and suffered loss of standing in the community and resulting pecuniary losses, including loss of income and loss of earning capacity.

WHEREFORE, PLAINTIFF demands judgment against SNYDER for actual compensatory damages, pain, suffering and emotional distress and demands a jury trial of all issues so triable.

**COUNT IV**
**COMMON LAW FALSE IMPRISONMENT/ARREST**
**(Brought by Plaintiff Against O'LEARY)**

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count:

74.    This is an action against Defendant O'LEARY for common law false imprisonment/arrest. This Count is pled in the alternative and for the purposes of this count, O'LEARY was acting outside the course and scope of his employment with Defendant SHERIFF.

75.    PLAINTIFF identified in the paragraph herein are entitled to relief against O'LEARY in that he intentionally and unlawfully detained and restrained PLAINTIFF when the Plaintiff was unlawfully seized and deprived of their libe1ty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period

of time.

76.     This unlawful restraint of the PLAINTIFF's liberty was also accomplished by O'LEARY confining PLAINTIFF to an area in which the PLAINTIFF did not wish to be confined.

77.     PLAINTIFF was further restrained by O'LEARY's use of coercive words and threats of force as well as actual force and immediate means of coercion against PLAINTIFF, so that the PLAINTIFF was restrained and deprived of liberty. O'LEARY restrained Plaintiff without any justification and in the absence of probable cause.

78.     At all times material to this action, and at all times during which PLAINTIFF was being unlawfully restrained, the PLAINTIFF was restrained against his will, and without consent, so that PLAINTIFF was not free to leave his places of confinement. O'LEARY engaged in a pattern of falsifying drug tests against Plaintiff, drug paraphernalia and other items to falsely arrest PLAINTIFF and others within Martin County over a period of years.

79.     As a direct and proximate cause of Defendant O'LEARY's actions, PLAINTIFF has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.

WHEREFORE, PLAINTIFF demands judgment against O'LEARY for actual compensatory damages, pain, suffering and emotional distress and demands a jury trial of all issues so triable.

**<u>COUNT V</u>**
**FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983**
**(Brought by Plaintiff Against O'LEARY)**

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count.

80.     This count sets forth a claim against individual Defendant O'LEARY, who, individually and in tandem, violated PLAINTIFF's rights under the Fourth Amendment to the United States Constitution to be free from false arrests. These violations were of the type and character as to which any reasonable law enforcement agency or officer would be aware.

81.     O'LEARY misused his power, possessed by virtue of state law, and made it possible only because he was clothed with the authority of state law. The violations of PLAINTIFF's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983. O'LEARY is a person under the laws applicable to this Count.

82.     The foregoing actions of O'LEARY were engaged in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton disregard of human rights, safety, and property, and were engaged in without any lawful justification and in the absence of probable cause. O'LEARY knew or should have known that there was no probable cause to arrest the PLAINTIFF given the circumstances present and the clearly established law on the proof needed to establish "arguable probable cause." Defendant O'LEARY lied and falsified drug tests against the Plaintiff identified in this count. O'LEARY falsified probable cause affidavits and other documents to cause the arrest and malicious prosecution of the PLAINTIFF. These actions violated the Fourth Amendment to the United States Constitution.

83.     Defendant O'LEARY is a person under applicable law and is liable to PLAINTIFF for the violation of legal and constitutional rights.

84.     Based upon the facts presented to Defendant O'LEARY, no reasonable law enforcement officer could have concluded that there existed any probable cause to arrest the PLAINTIFF. The law was settled and clearly established that the actions of Defendant O'LEARY constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

85.     The actions or inactions of Defendant O'LEARY as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of PLAINTIFF when he knew of and disregarded a risk to PLAINTIFF's health and safety.

86.      As a direct and proximate cause of Defendant O'LEARY's actions, PLAINTIFF has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. PLAINTIFF is entitled to punitive damages.

WHEREFORE, PLAINTIFF demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

## COUNT VI
### COMMON LAW MALICIOUS PROSECUTION
### (Brought by Plaintiff Against O'LEARY)

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count:

87.     This count sets forth claims against Defendant O'LEARY for malicious prosecution and is pied in the alternative. For purposes of this count, Defendant O'LEARY was acting outside the course and scope of his employment with SHERIFF.

88.     Defendant O'LEARY caused the commencement and/or continuation of criminal proceedings against the PLAINTIFF subject to this Count. The subject proceedings had bona fide terminations in PLAINTIFF favor in that the charges against Plaintiff were dropped or dismissed or otherwise resolved in PLAINTIFF's favor. Defendant was a person for the purposes of this Count.

89.     There was no probable cause or reasonable basis in fact or in law for O'LEARY to cause the commencement of the criminal proceedings against PLAINTIFF.

90.      O'LEARY acted intentionally and with malice in initiating the criminal proceedings against the PLAINTIFF subject to this Count, as well as in making the arrests of PLAINTIFF, and Defendant O'LEARY knew that his actions against PLAINTIFF were not supported by even arguable probable cause.

91.      As a direct and proximate cause of Defendant O'LEARY's actions, PLAINTIFF has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future. PLAINTIFF is entitled to punitive damages under this count.

WHEREFORE, the PLAINTIFF demand judgment against O'LEARY for actual compensatory damages, pain, suffering and emotional distress and demands a jury trial of all issues so triable.

## COUNT VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Brought by Plaintiff Against O'LEARY)

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count:

92.    This count sets forth a claim against O'LEARY for intentional infliction of emotional distress. This claim is pied in the alternative, and for the purpose of this claim, O'LEARY was acting outside the course and scope of their employment with SHERIFF.

93.    O'LEARY's conduct set forth in part above included multiple instances of mistreatment of PLAINTIFF. This conduct by O'LEARY constituted extreme and outrageous conduct that would shock the conscience of a reasonable person and goes beyond all bounds of decency. O'LEARY's conduct was the proximate cause of PLAINTIFF's emotional distress and PLAINTIFF's emotional distress is severe. O'LEARY's conduct constitutes the actionable tort of intentional infliction of emotional distress.

94.    O'LEARY maliciously and intentionally caused PLAINTIFF emotional distress by making false statements all to cause PLAINTIFF to be unjustifiably subjected to arrest, imprisonment, and prosecution. These actions by O'LEARY were taken in bad faith and with a malicious purpose and with a willful disregard for PLAINTIFF's rights.

95.    As a direct and proximate result of the above unlawful acts and omissions, PLAINTIFF was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community, he has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of O'LEARY's actions, and is therefore entitled to compensatory damages pursuant to the above provisions. PLAINTIFF's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future. PLAINTIFF is entitled to punitive damages under this count.

WHEREFORE, PLAINTIFF demands judgment against O'LEARY for actual

compensatory damages, pain, suffering and emotional distress and demands a jury trial of all issues so triable.

## COUNT VIII
## FOURTEENTH AMENDMENT VIOLATIONS
### (Brought by Plaintiff Against O'LEARY)

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count.

96.     This count sets forth claims against O'LEARY for abuse of power and the violation of the PLAINTIFF property and liberty interests under the Due Process clause of the Fourteenth Amendment, brought through U.S.C. § 1983. This count is set forth in the alternative and both the procedural and substantive Due Process rights of the PLAINTIFF are implicated and a claim for outrageous and shocking the conscious conduct is made herein.

97.     O'LEARY violated the substantive and procedural Due Process clause of the Fourteenth Amendment by conducting illegal traffic stops, conducting illegal searches of PLAINTIFF's vehicle and person, placing illegal drugs, drug paraphernalia, narcotics equipment and devices, and other contraband on or around PLAINTIFF, illegally arresting and detaining PLAINTIFF, causing the malicious criminal prosecution of PLAINTIFF, making illegal false sworn statements in official documents regarding PLAINTIFF, and violating the civil and constitutional rights of PLAINTIFF against illegal search and seizure of their person and property, and their illegal and improper detention, prosecution and incarceration, for which there was no justification or legal basis. There was no process available to PLAINTIFF to prevent or stop O'LEARY from taking these illegal actions against the PLAINTIFF. The actions against PLAINTIFF were taken knowingly, maliciously, and unlawfully, and under color of state law.

98.     O'LEARY misused and abused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violation of PLAINTIFF's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. § 1983.

99.     O'LEARY is liable to PLAINTIFF for the violation of legal and constitutional rights.

100.    O'LEARY acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for human rights, safety, and property by conducting illegal traffic stops, conducting illegal searches of PLAINTIFF's vehicle and person, placing illegal drugs, drug paraphernalia, narcotics equipment and devices, and other contraband on or around PLAINTIFF, illegally arresting and detaining PLAINTIFF, causing the malicious criminal prosecution of PLAINTIFF, making illegal false sworn statements in official documents regarding PLAINTIFF, and violating the civil and constitutional rights of PLAINTIFF against illegal search and seizure of their person and property, and their illegal and improper detention, prosecution and incarceration as described in part above.

101.    The foregoing actions of O'LEARY were willful, wanton and in reckless disregard of PLAINTIFF's constitutional rights and were taken without any lawful justification and resulted in the violation of the PLAINTIFF's constitutional rights.

102.    As a direct and proximate result of the actions of O'LEARY, PLAINTIFF has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future. PLAINTIFF is entitled

to punitive damages.

WHEREFORE, PLAINTIFF demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

<u>**COUNT IX**</u>
**FOURTH AMENDMENT VIOLATION -**
**UNCONSTITUTIONAL SEARCH AND SEIZURE**
**(Brought by Plaintiff Against O'LEARY)**

Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference in this Count.

103.    This count sets fourth claims against O'LEARY for unconstitutional searches and seizures under the Fourth Amendment to the United States Constitution when they conducted pretextual stops of PLAINTIFF as alleged herein.

104.    The Defendant's violations of Fourth Amendment to the United State Constitution were of the type and character as to which any reasonable person would be aware.

105.    O'LEARY acted in bad faith and with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

106.    The foregoing actions of O'LEARY were willful, wanton and in reckless disregard of Plaintiff' rights, and were taken without any lawful justification and/or in the absence of reasonable suspicion, arguable probable cause and/or probable cause.

107.    Based upon the facts presented to O'LEARY and the applicable law, no reasonable law enforcement officer could have concluded that there existed any legal basis to stop and search PLAINTIFF's vehicle and to seize property therefrom. The law was well settled and clearly established that the actions of O'LEARY constituted an unlawful search and seizure under the Fourth Amendment to the United States Constitution at the time the

actions by O'LEARY were committed.

108.     The actions or inactions of O'LEARY as set forth in part above constituted deliberate indifference or reckless disregard for the safety of PLAINTIFF when O'LEARY knew of and disregarded a risk to PLAINTIFF's health and safety.

109.     O'LEARY misused his power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violation of PLAINTIFF's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

110.     As a direct and proximate cause of O'LEARY's actions, PLAINTIFF has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. PLAINTIFF is also entitled to punitive damages under this count.

WHEREFORE, PLAINTIFF demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

**JASON M. WANDNER, P.A.**
*Attorney for the Plaintiff*
100 N. Biscayne Boulevard
Suite 1607
Miami, FL 33132
Telephone:     (305) 868-1655
E-Mail:          Jason@wandnerlaw.com

## CERTIFICATE  OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was furnished

via CM/ECF on this  10th day of August, 2022 upon  PURDY, JOLLY, GIUFRFREDA,

BARRANCO & JISA, P.A., (Counsel for Defendant Sheriff)  2455 E. Sunrise Boulevard,

Suite 1216, Fort Lauderdale, FL 33304; summer@purdylaw.com; isabella@purdylaw.com.

**JASON M. WANDNER, P.A.**
*Attorney for the Defendant*
100 N. Biscayne Boulevard
Suite 1607
Miami, FL 33132
Telephone:     (305) 868-1655
Facsimile:      (305) 503-7480
E-Mile:          Jason@wandnerlaw.com

By: */s/ Jason M. Wandner, Esq.*
JASON M. WANDNER, ESQUIRE
FLORIDA BAR NO. 0114960