UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14282-Cannon/McCabe

MAXWELL TATUM,

    Plaintiff

v.

WILLIAM D. SNYDER, in his official
Capacity as Sheriff, Martin County,
Florida and STEVEN O'LEARY,
individually,

    Defendants.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on a Motion for Summary Judgment ("Motion") (DE 49) filed by Sheriff William D. Snyder in his official capacity ("Sheriff"), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 52). For the following reasons, the Court **RECOMMENDS** that the Motion be **GRANTED**.

**I.  OVERVIEW**

This is a civil rights case involving a former deputy sheriff of the Martin County Sheriff's Office, Steven O'Leary ("Deputy"), who made a series of false arrests with fabricated evidence during his probationary term of employment in 2018 and 2019. Deputy is currently serving a lengthy prison sentence due to his misconduct. Among other persons, Deputy arrested the Plaintiff in this case. As a result, Plaintiff brought this suit against Deputy and Sheriff alleging violations of his civil rights. As to Sheriff, the complaint alleges a claim for violation of 42 U.S.C. § 1983 (Count II), and a claim for Florida common law false arrest/imprisonment (Count III) (DE 1).

On August 17, 2023, Sheriff filed this Motion, seeking summary judgment on four grounds:

(A)     the statute of limitations has expired on all claims;

(B)     the § 1983 claims fail because Plaintiff cannot meet the standard set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978),

(C)     the Florida common law claims fail under Florida's sovereign immunity statute, Fla. Stat. § 768.28(9)(a), and

(D)     Plaintiff has no viable claim for punitive damages as a matter of law.

(DE 49). As set forth below, the Court agrees summary judgment should be entered.

## II.    SUMMARY JUDGMENT STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest

upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court also must resolve ambiguities and draw justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Ultimately, "the trial court may … deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

### III.  UNDISPUTED FACTS

The record shows the following undisputed facts.

#### A.  Events Prior to Plaintiff's Arrest

On February 1, 2018, Sheriff hired Deputy on a probationary period of employment (DE 51 ¶ 9). During Deputy's tenure, he met all requirements to serve as a law enforcement officer in Florida, including training related to making lawful arrests, searches, and seizures (DE 67 ¶¶ 45-48). Sheriff initially assigned Deputy to a training unit for new recruits, then to the Uniform Road Patrol Division, where he worked the midnight shift (DE 51 ¶¶ 10-13).

During his period of employment, Deputy developed a reputation for making a high number of narcotics arrests (DE 64-3 at 23). Although the record is not clear as to timing, at some point Deputy's supervisors even had discussions with him to make sure he was following proper procedural and legal protocols (DE 64-3 at 19-20, 23).

### B.  Plaintiff's Arrest & Guilty Plea

On June 19, 2018, Deputy responded to complaints of a vehicle parked illegally inside a park after hours (DE 50 ¶ 15, DE 55 ¶ 2, DE 50-2 at 2). Deputy approached the vehicle, which had no passengers at the time, and claimed to observe through the window a Ziploc bag of syringes and a loose orange pill (DE 50 ¶ 17, DE 55 ¶ 2, DE 50-2 at 2). Soon after, Plaintiff approached the vehicle and identified himself as the owner (DE 50 ¶ 18, DE 55 ¶ 2, DE 50-2 at 2). According to Deputy's arrest affidavit, Plaintiff then retrieved his identification from the vehicle and locked and shut the door behind him (DE 50 ¶ 19, DE 55 ¶ 2, DE 50-2 at 2).

At that point, Deputy claims he read Plaintiff the *Miranda* warnings, to which Plaintiff responded that the clothing and boots inside the vehicle were his, but that everything else "must be planted" (DE 50 ¶ 20, DE 55 ¶ 2, DE 50-2 at 2). When asked to clarify what this meant, Deputy claims Plaintiff responded, "the drugs" (DE 50 ¶ 21, DE 55 ¶ 2, DE 50-2 at 2). Deputy then conducted a search of the vehicle and claimed to recover two pink ChapStick containers, each containing a white substance that Deputy believed, based on his training, to be methamphetamine (DE 50 ¶¶ 22-23, DE 55 ¶ 2, DE 50-2 at 2). Deputy also claimed to recover a vape from the vehicle that emitted an odor of cannabis (DE 50 ¶ 24, DE 50-2 at 2, DE 55 ¶ 2).

Deputy claimed to conduct a field test on the white substance inside the ChapStick containers, finding a positive result for methamphetamine (DE 50 ¶ 23, DE 55 ¶ 2, DE 50-2 at 2). He also claimed to conduct a field test on the substance inside the vape, finding a positive result for tetrahydrocannabinol ("THC") content (DE 50 ¶ 24, DE 55 ¶ 2, DE 50-2 at 2). As a result, Deputy arrested Plaintiff for possession of marijuana over 20g, possession of methamphetamine, and possession of drug paraphernalia (DE 50-2 at 1-2).

Thereafter, on July 2, 2018, the State Attorney for the Nineteenth Judicial Circuit (hereafter "State Attorney") charged Plaintiff, by way of information, with (1) possession of THC, (2) possession of methamphetamine, and (3) possession of drug paraphernalia (DE 66-2).[1] Plaintiff remained in pretrial custody until October 4, 2018, at which time he entered a plea of no contest to all charges (DE 66-3). A state court judge thereafter adjudicated him guilty of all counts and sentenced him to eighteen months in the Department of Corrections, with credit for time served (DE 1 ¶ 43, DE 51 ¶ 28, DE 55 ¶ 3).

C. **Deputy's Arrest & Guilty Plea**

In the meantime, on or about January 10 or 11, 2019, the State Attorney contacted Sheriff to report a problem, namely, that laboratory testing in three separate cases (all unrelated to Plaintiff's own case) had revealed seizures of substances that failed to test positive for the controlled substances listed in the arrest and/or charging paperwork (DE 50-1 at 3, DE 51 ¶ 29, DE 55 ¶ 3, DE 64-3 at 12). On review, Sheriff's records showed that, in all three cases, Deputy had been responsible for submitting the problem items into evidence (DE 50-1 at 3, DE 51 ¶ 30, DE 55 ¶ 4).

On the same day as the State Attorney's phone call, one of Deputy's supervisors went to the evidence unit to review past evidence seized by Deputy (DE 51 ¶ 31, DE 55 ¶ 5, DE 64-3 at 12-16). The supervisor immediately knew that "something was wrong with the evidence" (DE 64-3 at 15). On January 11, 2019, Sheriff placed Deputy on administrative leave and commenced an

---

[1] By separate Order, the Court has taken judicial notice of numerous documents related to Plaintiff's underlying criminal case in state court (DE 66). To the extent the parties wish to object to judicial notice, they may do so as set forth in Section V of this Report and Recommendation. *See Paez v. Sec. Fla. Dep't of Corrs.*, 947 F.3d 649, 651-53 (11th Cir. 2020) (finding no error where court took judicial notice of state court records in a pro se § 2254 petition, given that parties received notice and opportunity to object via objections to Magistrate Judge's Report and Recommendation).

internal criminal investigation (DE 51 ¶ 32, DE 55 ¶ 5, DE 50-3 at 1-2, DE 64-3 at 16).  Sheriff thereafter rescinded Deputy's probationary period of employment on January 14, 2019, effectively terminating him (DE 51 ¶ 33, DE 55 ¶ 5, DE 50-3 at 3-4).

Following the criminal investigation into Deputy's actions, one of Sheriff's detectives prepared an affidavit in support of a criminal complaint, asserting probable cause to believe that, between February 2018 and January 2019, Deputy, while acting under color of law, engaged in an ongoing pattern of crime, including official misconduct, fabricating evidence, false imprisonment, and false official statement (DE 51 ¶ 38, DE 55 ¶ 7, DE 50-1 at 3).  The affidavit asserted, among other things, that Sheriff had arranged for independent laboratory testing of substances seized by Deputy and that Deputy had made 32 drug arrests for which there was no evidence of any controlled substance ever being present (DE 50-6 at 1, DE 50 ¶ 39, DE 51 ¶¶ 39-40, DE 55 ¶ 7). Deputy also made five drug arrests in which the seized substance tested positive for a controlled substance different than the one listed in the arrest or charging paperwork (DE 50-6 at 4, DE 50 ¶ 39, DE 51 ¶ 39, DE 55 ¶ 7).

Plaintiff's case was among the misidentified-drug cases referred to in the affidavit.  That is to say, even though Plaintiff was charged with and pled guilty to possession of methamphetamine, subsequent laboratory analysis failed to show the presence of that drug in the items Deputy claimed to seize from Plaintiff (DE 50-6, DE 50 ¶ 40, DE 51 ¶ 40, DE 55 ¶7). Instead, laboratory analysis dated January 29, 2019, revealed that the white substance within the ChapStick containers was in fact cocaine (not methamphetamine), and that the previously unidentified orange pill was Buprenorphine, a Schedule III drug (DE 50-4, DE 50 ¶ 36, DE 51 ¶ 40, DE 55 ¶7).  As to the vape, laboratory analysis confirmed the substance inside to be THC,

making it the only drug correctly identified in Plaintiff's arrest and charging paperwork (DE 50-4, DE 50 ¶ 36, DE 51 ¶ 40, DE 55 ¶7).

Thereafter, on August 9, 2019, the State Attorney charged Deputy by way of a fifty-count Information, *State v. Steven O'Leary*, Case No. 2019CF000872 (DE 1 ¶18, DE 51 ¶ 41, DE 55 ¶ 7, DE 64-9 at 1-2).  The Information included seventeen counts of official misconduct, nine counts of false official statement, eight counts of tampering with evidence, thirteen counts of false imprisonment, one count of second-degree petit theft, and one count of battery (DE 1 ¶ 18, DE 51 ¶ 41, DE 55 ¶ 7, DE 64-9 at 1-2).  The Information did not include any counts stemming directly from Plaintiff's arrest.

On December 2, 2021, Deputy pled no contest to all counts of the Information (DE 50 ¶ 42, DE 51 ¶ 42, DE 55 ¶ 7).  The state court thereafter adjudicated him guilty and sentenced him to a lengthy term of imprisonment (DE 50-7, DE 50 ¶ 42, DE 51 ¶ 42, DE 55 ¶ 7).  As of the date of this Report and Recommendation, Deputy remains in prison (DE 50-8, DE 51 ¶ 44, DE 55 ¶ 7).

D.     **Setting Aside of Plaintiff's Judgment & Sentence**

In the meantime, on January 15, 2019, Plaintiff moved to set aside his own judgment and sentence "based upon newly discovered issues surrounding the arresting officer…." (DE 66-5). The State Attorney made no objection to the motion (DE 66-5).  As a result, on January 15, 2019, the state court granted Plaintiff's motion and entered an Order Setting Aside Judgment and Sentence (DE 66-6).  The next day, the State Attorney also filed a Nolle Prosequi, essentially dropping all charges stemming from the arrest made by Deputy (DE 66-7).

Thereafter, on August 10, 2022, Plaintiff filed this action, alleging a variety of constitutional and common law torts against both Deputy and Sheriff (DE 1).  Plaintiff denies that he possessed any illegal drugs on the date of his arrest and alleges that Deputy falsely planted the

7

drugs that led to his arrest, prosecution, and conviction (DE 1 ¶¶ 30, 38; DE 55 ¶¶ 23-24).  Deputy has defaulted (DE 40), so this Motion pertains only to Sheriff.

IV.     DISCUSSION

Sheriff moves for summary judgment on four grounds, each of which the Court will address in turn.

   A.     Statute of Limitations

Sheriff first argues that the statute of limitations has expired on all claims alleged in Counts II and III.  The Court will address each count separately.

      1.      Count II – 42 U.S.C. § 1983

Count II alleges a claim under 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States.  As to statutes of limitations, § 1983 claims look to the law of the forum State for the most analogous limitations period.  *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002).  In this case, Florida's four-year statute of limitations applies.  *Id.*; *see also* Fla. Stat. § 95.11(3)(n) (applying four-year statute of limitations to actions for false arrest, false imprisonment, and malicious prosecution actions).

As to accrual, § 1983 claims look not to state law, but to federal common law, applying the principle that "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Burgest v. McAfee*, 264 F. App'x 850, 852 (11th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (cleaned up).  The accrual date thus varies depending upon the type of constitutional tort alleged.  Here, Count II alleges § 1983 claims under three separate constitutional tort theories, namely, "wrongful arrest, imprisonment,

8

and prosecution" (DE 1 ¶ 94). The Supreme Court has determined the proper accrual date for claims under each of these theories.

As to the first two, in *Wallace v. Kato*, 549 U.S. 384, 389 (2007), the Supreme Court addressed the accrual date for § 1983 claims premised on theories of false arrest and false imprisonment, which the Court characterized as "overlapping" torts. *See also Eloy v. Guillot*, 289 F. App'x 339, 342 n.3 (11th Cir. 2008) (treating § 1983 claims for false arrest and false imprisonment as "functionally indistinct"). In such cases, the Supreme Court determined that the statute of limitations begins to run "when the alleged false imprisonment ends." *Wallace*, 549 U.S. at 389 (citing 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (rev. 4th ed.1916)). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* As the Court reasoned, "[w]e conclude that the statute of limitations on petitioner's § 1983 claim [for false arrest/imprisonment] commenced to run when he appeared before the examining magistrate and was bound over for trial." *Id.* at 391.

Once a claimant is "bound over for trial" on formal charges, the claimant's continued detention forms part of the damages for the "entirely distinct" constitutional tort of malicious prosecution, which "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Id.* at 389. From the moment of arraignment forward, therefore, "any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.*

As to the accrual date for § 1983 claims premised on a theory of malicious prosecution, the Supreme Court answered that question in *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). In that case, the Court drew an analogy to traditional common law claims for malicious prosecution,

9

noting that such claims do not accrue "until the criminal proceedings have terminated in the plaintiff's favor." *Id.* at 489 (citing 1 C. Corman, Limitation of Actions § 7.4.1, p. 532 (1991)). Applying that logic, the Court determined that the statute of limitations for a § 1983 claim for damages attributable to an unconstitutional conviction or sentence does not accrue until the underlying conviction or sentence has been "invalidated." *Id.* at 490.

Applying these principles here, the Court finds that the four-year statute of limitations has expired on Plaintiff's § 1983 claims for false arrest/imprisonment. Deputy arrested Plaintiff on June 19, 2018, and the State Attorney charged him by way of Information on July 2, 2018 (DE 66-2). Thereafter, Plaintiff waived his right to formal arraignment and entered a written plea of not guilty on all charges on July 10, 2018 (DE 66-8), at which point he was "bound over for trial" within the meaning of *Wallace*, 549 U.S. at 388. Plaintiff's § 1983 claim for false arrest/imprisonment therefore accrued on July 10, 2018. Plaintiff did not file this action until August 10, 2022, more than four years after the claim accrued (DE 1). As such, the statute of limitations has expired on the § 1983 claim for false arrest/imprisonment, and summary judgment should be entered on this claim.

The Court reaches a different conclusion as to the § 1983 claim for malicious prosecution. The undisputed facts show that the state court entered its Order Setting Aside Judgment and Sentence on January 15, 2019, and that the State Attorney filed a Nolle Prosequi the next day, essentially dropping all charges against Plaintiff (DE 66-6, DE 66-7). The Court finds these actions "invalidated" Plaintiff's conviction within the meaning of *Heck*, 512 U.S. at 489-90, triggering the accrual of his cause of action. Plaintiff thereafter filed this action within the four years of the accrual date. The Court therefore denies summary judgment as to the § 1983 claim for malicious prosecution.

### 2. Count III – Common Law False Arrest/Imprisonment

Count III alleges a Florida common law claim for false arrest/imprisonment (DE 1 at 15). Florida law applies a four-year statute of limitations to such claims. Fla. Stat. § 95.11(3)(n); *see also Harris v. Goderick*, 608 F. App'x 760, 763-64 (11th Cir. 2015) ("In Florida … the applicable period for false arrest claims is four years."). Under Florida law, claims for false arrest/imprisonment accrue on the date of the allegedly unlawful arrest. *See, e.g.*, *Leatherwood v. City of Key W.*, 347 So. 2d 441, 442 (Fla. 3d DCA 1977) ("The cause of action for false arrest and imprisonment accrued on the day of plaintiff's arrest.").

Applying these principles here, the Court finds the four-year statute of limitations has expired on the common law claims alleged in Count III. Deputy arrested Plaintiff on June 19, 2018, at which point the common law claims accrued. Plaintiff did not file this action until August 10, 2022, more than four years after accrual (DE 1). As such, the statute of limitations bars Count III, and summary judgment should be entered on this claim.[2]

### B. *Monell* Claim

Sheriff next argues summary judgment should be entered on the § 1983 claim (Count II) for failure to satisfy the elements of a *Monell* claim, so-named for *Monell,* 436 U.S. at 658, where the Supreme Court recognized that municipalities qualify as "persons" subject to suit under § 1983. To demonstrate liability against a municipality, a plaintiff must do more than merely show the municipality employed a tortfeasor, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691. "[A] city is not vicariously liable under § 1983 for the constitutional torts of

---

[2] The rulings reached in Section IV.A render moot several of the remaining arguments raised in the Motion. Nevertheless, for the sake of completeness, Court will continue to address all arguments. To the extent any rulings overlap, they may be considered as alternative holdings.

its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

As such, the Supreme Court has defined very narrow circumstances under which a municipality can be held liable for a constitutional injury. In this case, Plaintiff has identified three recognized theories of § 1983 *Monell* liability:

- where the municipality adopts an "official policy" that causes constitutional injury;

- where the municipality follows a "custom or practice" that causes a constitutional injury; and

- where the municipality's "failure to train or supervise" causes a constitutional injury.

(DE 1 at 8-10). The Court will address each theory in turn.

### 1. Official Policy

First, *Monell* recognizes that § 1983 liability attaches when the municipality itself adopts a formal policy, rule, or regulation that causes constitutional violations. 436 U.S. at 658. In *Monell*, for example, the municipality adopted a formal policy that required pregnant employees to take unpaid maternity leave before such leave was medically necessary. *Id.* at 660-61. As such, the municipality had adopted a formal policy that served as the "moving force" for a constitutional violation inflicted on female employees. *Id.* at 694-95.

The undisputed facts here show Plaintiff has no viable claim under this theory. Sheriff never adopted any formal policies that directed employees such as Deputy to make arrests without probable cause, to fabricate false evidence, or to make false statements in police records. To the contrary, Sheriff's policies forbade such conduct (DE 50 ¶¶ 51, 54). To the extent Plaintiff pursues a *Monell* claim under the "official policy" theory, summary judgment should be entered in Sheriff's favor.

## 2. Custom or Practice

Next, *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91 (cleaned up). To prove a custom or practice, a plaintiff must establish a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). As the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) ("[T]he plaintiff must allege a 'pattern' of excessive force including specific facts of numerous incidents[.]").

The undisputed facts here show Plaintiff has no viable claim under this theory. Sheriff's employees did not engage in a widespread pattern of making arrests without probable cause, fabricating evidence, or making make false statements in police records. To the extent Plaintiff pursues a *Monell* claim under the "custom or practice" theory, summary judgment should be entered in Sheriff's favor.

The Court has considered but rejects Plaintiff's argument that Deputy's misconduct was so widespread – in and of itself – as to constitute a "custom or practice" for *Monell* purposes. Plaintiff points out that Deputy made thirteen false arrests in only four months (DE 54 at 7). The Court finds, however, that the actions of a single rogue employee cannot establish *Monell* liability under the "custom or practice" theory. *Cf. Victoria W. v. Larpenter*, 205 F. Supp. 2d 580, 589 (E.D. La. 2002) (noting that "a single, isolated unconstitutional action by 'rogue' employees of the

municipality will almost never trigger municipal liability under § 1983"). Rather, as discussed below, the actions of a single rogue employee should be analyzed under the "failure to train/supervise" theory of *Monell* liability.

### 3. Failure to Train/Supervise

Next, the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. To show "deliberate indifference" in a failure to train/supervise case, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and that the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a *Monell* failure to train/supervise theory. *Id.*; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08 (1997) ("In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury.").

The Supreme Court has cautioned that rigorous standards of fault and causation must be employed so that failure-to-train/supervise claims do not collapse into respondeat superior claims. *See Canton*, 489 U.S. at 379 ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983."). "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will

14

be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id*. at 392; *see also Bd. of Cnty. Comm'rs*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

Sheriff argues summary judgment should be entered here because Plaintiff cannot show a key element necessary to a *Monell* claim, i.e., notice. To satisfy the notice requirement, Plaintiff must prove that Sheriff "knew based on at least one earlier instance of unconstitutional conduct materially similar to [Deputy's] violation of [Plaintiff's] constitutional rights that [additional] [training/supervision] was needed to avoid [similar constitutional violations] likely recurring in the future." *See* Eleventh Circuit Pattern Jury Instruction (Civil) No. 5.11, Government Entity Liability for Failure to Train or Supervise. The Eleventh Circuit has emphasized that "[e]stablishing notice of a need to train or supervise is difficult." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1189 (11th Cir. 2011).

Applying that standard here, the Court agrees the record contains insufficient evidence to raise a genuine issue of material fact as to notice. Rather, the undisputed facts show that Sheriff lacked notice – prior to Plaintiff's arrest – that Deputy was planting drugs on innocent people, thereby triggering notice of a need to train or supervise Deputy not to engage in such conduct, the deliberate indifference to which might give rise to a *Monell* claim.

The Court notes that Plaintiff cannot rely upon evidence that post-dates his own arrest to prove notice. *See Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) (affirming judgment where "court found no evidence of a history of widespread *prior* abuse by Department personnel that would have put the sheriff on notice of the need for improved training or supervision")

(emphasis added). In the record here, the vast majority of evidence concerning Deputy's wrongdoing post-dates Plaintiff's arrest, including the numerous test results from the Indian River Crime Laboratory that showed Deputy had seized non-narcotics (or wrong narcotics) evidence from dozens of suspects. Sheriff cannot be charged with knowledge of these events since the evidence post-dated Plaintiff's own arrest.

Likewise, the Court has considered, but finds unpersuasive, Plaintiff's argument that the Court should deny summary judgment on collateral estoppel grounds, because the Court denied summary judgment on claims raised in other cases involving civil rights plaintiffs arrested by Deputy, specifically in *Page, et. al. v. O'Leary, et. al.*, Case No. 2:20-cv-14460-AMC (hereafter "*Page*"), and *Martin, et. al. v. O'Leary, et. al.*, Case No. 2:21-cv-14469-AMC (hereafter "*Martin*") (DE 75 at 2-3). The Court questions whether collateral estoppel can attach to an order that denies summary judgment. Even if the doctrine could apply to such orders, it would not apply here because the issues at stake are not "identical" to the ones decided in the *Page* and *Martin* cases. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (noting the elements of collateral estoppel). *Page* and *Martin* involved different sets of plaintiffs, with different sets of arrests, decided upon different summary judgment records.

Indeed, a comparison of the facts here with the facts set forth in the *Page* and *Martin* orders highlights why the Court chose to deny summary judgment in those cases, but grant it here. In the prior cases, the Court found sufficient circumstantial evidence to raise a genuine issue of material fact as to notice based on a series of arrests spanning from August 7, 2018 (for plaintiff Kyte) to December 30, 2018 (for plaintiff Schmier). *See Page v. O'Leary*, No. 20-14460, 2022 WL 18662712, at *6-8 (S.D. Fla. Nov. 3, 2022), *R. & R. adopted*, 2023 WL 235575 (S.D. Fla. Jan. 18, 2023); *Martin*, DE 83 at 23. Plaintiff here, in contrast, was arrested almost two months earlier

than any of the arrestees in *Page* and *Martin*, making his case of notice the weakest of all arrestees and, in the Court's view, non-tenable (DE 50-2 at 2).

Based on the record here, Plaintiff can point to only two pieces of circumstantial evidence that occurred prior to his own arrest. First, on May 3, 2018, Deputy arrested an unrelated suspect for possession of cannabis (DE 50-1 at 11-12). Deputy claimed to have taken photographs and turned them into evidence but, in truth, he turned in no photographs (DE 50-1 at 11). Next, on May 28, 2018, Deputy arrested another unrelated suspect for possession of cocaine (DE 50-1 at 12-13). Deputy claimed to have photographed a black straw with cocaine residue and a small amount of "white rock like substance" (DE 50-1 at 12). In truth, he submitted no photographs and submitted a straw that "appear[ed] to be chewed on," which was "not consistent with the use of cocaine" (DE 50-1 at 13). In the Court's view, these incidents do not raise a genuine issue of fact as to whether Sheriff was on notice that Deputy was planting cocaine on innocent suspects – the constitutional violation alleged here.

Plaintiff also points to evidence showing Deputy made an unusually high number of narcotics arrests, especially for someone new to the job and not assigned to a narcotics unit (DE 54 at 7-14). As the Court acknowledged in the *Page* and *Martin* cases, however, this category of evidence, standing alone, does not suffice to raise a genuine issue of fact. *Page*, No. 20-14460, 2022 WL 18662712, at *6, *R. & R. adopted*, 2023 WL 235575; *Martin*, DE 83 at 16. The addition of two minor evidence abnormalities prior to Plaintiff's own arrest does not push the ball over the goal line. In short, the Court finds Plaintiff cannot raise a genuine issue of material fact sufficient to meet the "difficult" standard of showing notice for purposes of a *Monell* claim. *See AFL-CIO*, 637 F.3d at 1189 (noting that "[e]stablishing notice of a need to train or supervise is difficult"). For all of these reasons, summary judgment should be granted on Count II.

### C. Sovereign Immunity

Count III alleges a Florida common law claim for false arrest/imprisonment, seeking to hold Sheriff vicariously liable for Deputy's misconduct (DE 1 at 14-15). Sheriff moves for summary judgment based on Florida's sovereign immunity statute, which sets a limitation upon the type of conduct for which the State and its political subdivisions agree to waive sovereign immunity. Specifically, the statute provides:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment *or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

Fla. Stat. § 768.28(9)(a) (emphasis added).

To meet the "wanton and willful" standard under § 768.28(9)(a), the conduct must be "worse than gross negligence." *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 5th DCA 2003). In addition, it must be "more reprehensible and unacceptable than mere intentional conduct." *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987). "For conduct to be willful and wanton, it must be shown that the Sheriff knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015), *aff'd*, 719 F. App'x 859 (11th Cir. 2017).

Given the summary judgment record, Sheriff argues that no reasonable jury could reach any conclusion except that Deputy's conduct falls within the scope of § 768.28(9)(a). The Court agrees. No reasonable jury could reach any conclusion except that the conduct alleged here – planting cocaine on an innocent person – was committed "in bad faith or with malicious purpose

or in a manner exhibiting wanton and willful disregard of human rights" within the meaning of § 768.28(9)(a). Summary judgment should therefore be entered on Count III for this reason as well. *See N.R., by Ragan*, 418 F. Supp. 3d at 998 ("[I]f the facts alleged can occur only from [deputy's] bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails on sovereign immunity grounds [under Florida law.]").

### D. Punitive Damages

Finally, the WHEREFORE clause of Count II seeks punitive damages (DE 1 at 14). Sheriff seeks summary judgment, arguing that punitive damages cannot be recovered in a § 1983 action against a municipal entity (DE 65 at 12). The Court agrees. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). To the extent Plaintiff seeks punitive damages in this case, summary judgment should be entered in Sheriff's favor.

## V. CONCLUSION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned **RECOMMENDS** that Sheriff's Motion (DE 49) be **GRANTED** as follows:

1) The Motion should be **GRANTED** as to Count II in its entirety, and summary judgment should be entered for failure to satisfy the elements of a *Monell* claim. Alternatively, summary judgment should be entered on Count II, on statute-of-limitations grounds, to the extent Count II alleges a § 1983 claim for false arrest/imprisonment, but denied to the extent Count II alleges a § 1983 claim for malicious prosecution.

2)  The Motion should be **GRANTED** as to Count III in its entirety, and summary judgment should be entered based on the statute of limitations and Florida's sovereign immunity statute.

3)  The Motion should be **GRANTED** as to any request for punitive damages.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.   Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.   See 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 11th day of October 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE